UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
RICHARD REJHON,

                      Plaintiff,

     -against-

THE CITY OF NEW YORK ET AL,

                     Defendant.
------------------------------------------------------------ x

MEMORANDUM & ORDER
1:21-CV-4510 (ENV) (MMH)

VITALIANO, D.J.

On August 11, 2021, plaintiff Richard Rejhon commenced this action against the City of New York ("the City"); the City of New York Department of Transportation ("DOT"); the City of New York Department of Citywide Administrative Services ("DCAS"); and, in their individual capacities, Seupersaud Bharat; Kathy Walcott; Eric Dorcean; and Peter Wismer.[1] Stemming from his demotion following the expiration of a probationary promotion period, Rejhon brings claims for disability discrimination and harassment under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants now move to dismiss all claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

---

[1] Three other individual defendants named in this suit have since been terminated. The claims against them will not be addressed.

Background[2]

Rejhon is, and at all relevant times has been, hearing impaired. Am. Compl., Dkt. No. 24, ¶ 38. Even with the assistance of hearing aids, it is difficult for Rejhon to understand speech when there is background noise. *Id.* ¶¶ 38–39. As a result of his impairment, Rejhon struggles to regulate the volume of his voice and sometimes speaks louder than he intends or is otherwise considered appropriate. *Id.* ¶ 40. Rejhon alleges that defendants were on notice of his impairment by virtue of their awareness of his annual hearing tests and use of hearing aids. *Id.* ¶¶ 50–51.

Rejhon began his civil service career in October 2002 as an Auto Mechanic for DOT. Am. Compl. ¶ 36. As an Auto Mechanic, Rejhon was eligible to apply for promotion to the position of Supervisor of Mechanics by taking the associated civil service examination. *Id.* ¶ 42. In April 2012, Rejhon passed the civil service examination and was placed on the resulting certified civil service list. *Id.* ¶¶ 44–46. On September 17, 2018, Rejhon was selected from the list and appointed to the position of Supervisor of Mechanics, subject to the successful completion of a one-year probationary period. *Id.* ¶¶ 46–48.

Rejhon alleges that he was subjected to unlawful discrimination because of his hearing impairment during the one-year probationary period. Am. Compl. ¶ 49. Rejhon's complaints began in February 2019 when Bharat, his direct supervisor, assigned him to perform the work duties of a colleague on vacation, but did not provide him with access to the computer database that was necessary to perform the assigned task. *Id.* ¶ 53. When plaintiff requested the proper credentials, Bharat closed out the assignment, resulting in the appearance that Rejhon failed to complete the work. *Id.* ¶ 54. Rejhon objected to Bharat closing the assignment, but Bharat

---

[2] The facts are drawn from plaintiff's amended complaint. Arguments from defendants' motion to dismiss and reply in support of their motion to dismiss as well as plaintiff's amended complaint and opposition to the instant motion are considered. Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF) pagination.

2

purportedly responded by yelling at, berating, and demeaning Rehjon. *Id.* ¶ 55. Shortly thereafter, on February 26, 2019, Bharat sent Rejhon an email in which he accused Rejhon of being the one who had shouted and had an angry outburst. *Id.* ¶ 56.

The second alleged incident underlying Rejhon's discrimination claims involved defendants Walcott, Dorcean, and Wismer. In August 2019, Rejhon requested that Walcott answer an incoming telephone call because she was closer to the telephone and Rejhon wanted to avoid missing the call. Am. Compl. ¶ 61. Walcott responded by accusing Rejhon of yelling at her, and when Rejhon attempted to explain that he was sometimes unaware of the volume of his voice given his hearing impairment, Walcott "effectively called him a liar" and said that "he was intentionally rude to her." *Id.* ¶ 62. Walcott thereafter reported Rejhon for his yelling, which led to a meeting involving Rejhon, Walcott, Dorcean, and Wismer. *Id.* ¶ 63. During this meeting, Walcott "stated that she did not like [Rejhon's] loud voice," and accused Rejhon of not being truthful because she could tell, based on his demeanor, that he intended to yell. *Id.* ¶¶ 64–65. Dorcean and Wismer also cautioned Rejhon at this meeting that his speaking volume was "unacceptable" and "had to change." *Id.* ¶ 66.

Rejhon alleges that "against th[is] backdrop," Dorcean and Wismer "deprived [him] of a full and fair opportunity to successfully pass his probationary period" by subjecting him to "far more disadvantageous terms and conditions" of employment than other similarly situated employees. Am. Compl. ¶ 67. For example, even though Rejhon was appointed to his probationary position on September 17, 2018, he was not provided with his tasks and standards until February 7, 2019, in violation of the City's policies and procedure. *Id.* ¶ 68. Similarly in violation of City rules, Rejhon did not receive a probationary evaluation every three months, which

3

allegedly deprived him of timely notice as to any perceived deficiencies in his work performance. *Id.* ¶¶ 70–71.[3]

Three weeks before Rejhon's probationary period was set to expire, Wismer informed Rejhon that defendants wanted to extend his probationary period. Am. Compl. ¶ 73. Even though City law required Rejhon to be given at least one month's notice in advance of an extension proposal, Rejhon alleges that he was only given one day to consider, which "deprived [him] of sufficient time to explore his options." *Id.* ¶¶ 73–74. Wismer submitted a formal request seeking to extend the end of Rejhon's probationary period from September 16, 2019, to March 31, 2020, which DOT and DCAS ultimately granted. *Id.* ¶ 75.

Rejhon alleges that during this extension period, Wismer issued Rejhon two performance evaluations prior to recommending his demotion. Am. Compl. ¶ 77. Specifically, on February 7, 2020, in a "Non-Managerial Tasks and Standards Performance Evaluation," Rejhon was given a "Conditional" rating based on his February 2019 interaction with Bharat. *Id.* ¶ 78. And on February 11, 2020, Wismer rated Rejhon as "unsatisfactory" in three out of 11 categories, including "communications ability[:] effectiveness in oral and written communication," and recommended Rejhon's demotion. *Id.* ¶ 79. According to Rejhon, these performance evaluations did not describe any substantive or specific examples of any shortcomings in his actual performance. *Id.* ¶ 80. Nevertheless, on February 11, 2020, the Director of Personnel sent Rejhon a letter stating that his probationary appointment was being terminated, effective that day, and that he would be returned to his position as Auto Mechanic that he held prior to his probationary appointment, effective the following day. *Id.* ¶ 81.

---

[3] Rejhon did not receive a probationary evaluation until July 1, 2019, 41 weeks after his initial appointment. *Id.* ¶ 72.

4

On July 20, 2020, Rejhon filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that defendants discriminated against him based on his hearing disability. Am. Compl. ¶ 6. On May 25, 2021, the EEOC sent Rejhon a right to sue letter, and he initiated the instant action within 90 days of receiving the letter. *Id.* ¶ 6

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing such motions, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Anzelone v. ARS Nat'l Servs., Inc.*, No. 17-cv-04815, 2018 WL 3429906 (E.D.N.Y. July 16, 2018). To survive such a motion, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## Discussion[4]

Rejhon brings federal disability discrimination claims under the Rehabilitation Act and ADA. The Rehabilitation Act prohibits disability-based discrimination by government agencies

---

[4] Rejhon concedes "that DCAS and DOT are not suable entities and should be dismissed." Pl. Opp. at 29 n. 1. In line with this concession, all claims against constituent agencies or departments of the City are ordered dismissed and the Court shall construe these claims as raised against the City. *See Manessis v. New York City Dep't of Transp.*, No. 02-cv-359, 2003 WL 289969, at *1 n.2 (S.D.N.Y. Feb. 10, 2003).

5

and other recipients of federal funds.  Section 504(a) of the Rehabilitation Act provides:  "No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  ADA prohibits an employer from discriminating against an employee "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).

Although it is a test applied at the summary judgment stage, plaintiff's ADA and Rehabilitation Act claims are analyzed under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973) because this framework can be helpful in guiding the motion court's assessment of the complaint's plausibility, mindful that the record is not full strength as at summary judgment.  *See Artherly v. New York City Dep't of Educ.*, No. 23-cv-383, 2024 WL 1345741, at *6 (S.D.N.Y. Mar. 29, 2024).  Under the *McDonnel Douglas* framework at full strength, a plaintiff must first establish a *prima facie* case of discrimination, and then "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee.  If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination."  *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86–87 (2d Cir. 2022) (quotations omitted).

Indeed, on a motion to dismiss, "the court need only concern itself with the first phase of the *McDonnell Douglas* framework"—the *prima facie* case.  *Artherly*, 2024 WL 1345741, at *6.  To establish a *prima facie* case of disability discrimination, a plaintiff must show by a preponderance of the evidence that:  (1) the defendant is a covered employer; (2) the plaintiff was

6

disabled; (3) the plaintiff was qualified to perform his job with or without a reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability or perceived disability. *See Crosby v. Stew Leonard's Yonkers*, 695 F. Supp. 3d 551, 566–67 (S.D.N.Y. 2023); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). While a "plaintiff need not make out a *prima facie* case at the pleading stage," *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 449 (S.D.N.Y. 2023), "the allegations in a plaintiff's complaint must give plausible support to the *prima facie* requirements." *Artherly*, 2024 WL 1345741, at *6. Thus, to state a claim for discrimination, the plaintiff "must plead facts plausibly supporting that a 'minimal inference of discriminatory motivation' existed in connection with the adverse employment action." *Crosby*, 695 F. Supp. at 567 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) ("In order to establish a prima facie case of employment discrimination under the ADA or the Rehabilitation Act, a plaintiff must adequately plead that he was terminated because of a qualifying disability.").

As reflected in their motion papers, defendants do not dispute that they are covered employers, that Rejhon was disabled and qualified to do his job[5], and that he suffered an adverse employment action when he was demoted from probationary status; thus, the rub of the dispute is whether Rejhon adequately pleads a causal link between his protected status and the adverse employment action. At the pleading stage, a plaintiff may establish discriminatory motive either directly, by alleging facts that show an intent to discriminate, or indirectly, by alleging

---

[5] To the extent defendants argue in their reply brief that Rejhon was not qualified to do his job, *see* Defs. Reply, Dkt. No. 34, at 6–7, that argument has been waived. *See Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 160 n.5 (2d Cir.2006) ("we generally do not consider arguments that are raised for the first time in a reply brief").

circumstances that give rise to a plausible inference of discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

With regard to his plausible pleading burden, Rejhon focuses the Court's attention on three comments made by his colleagues that he claims evince discriminatory motive. *First*, when Rejhon instructed Walcott to pick up a ringing telephone, Walcott criticized him for yelling and accused him of lying about the cause of his yelling; *second*, Walcott later stated in a meeting with their supervisors that she did not like his loud voice; and *third*, at that same meeting, Rejhon's supervisors cautioned him that his behavior, including his volume when speaking, was unacceptable. *See* Am. Compl. ¶¶ 56–57; 62–66; *see* Pl. Opp., Dkt. No. 33, at 26. Contrary to plaintiff's assertions, these comments constitute stray remarks not suggestive of discriminatory intent because "they lack a causal nexus" to the demotion decision that is plausibly pleaded in the amended complaint. *Luka v. Bard College*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (dismissing disability discrimination claim where discriminatory animus was based on stray remarks).

To determine whether a comment is probative of discrimination or a mere "stray remark," courts consider: "(1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)." *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Considering these factors, the comments as pleaded by Rejhon in his amended complaint constitute stray remarks that do not give rise to an inference of disability discrimination. Not only is there no allegation that Walcott, Dorcean, or Wismer was a decisionmaker with regard to the decision to demote Rejhon, but the comments were also made approximately six months before plaintiff's demotion, and there is no other allegation linking these comments to the

demotion. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (comments made three months before plaintiff's termination did not raise inference of discrimination because the "time lapse between the remarks and the adverse employment action suggests that the incidents were not related" and "the Complaint does not allege that the remarks were related to the decision-making process resulting in plaintiff's termination.").

Rejhon also seeks refuge for his claims in the City's failure to adhere to ever jot and tittle of the various regulations attendant to his probationary promotion and its termination, including the City's extension of his probationary period in excess of six-months and without notice and depriving him of quarterly performance evaluations. On this truncated base, plaintiff argues that he was treated less well than other similarly situated civil servants. *See* Pl. Opp. at 24–25. A plaintiff can raise a *prima facie* inference of discrimination by demonstrating that his employer treated him less favorably than similarly situated employees outside of his protected class. *See Palmer v. Schegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (citing *Littlejohn*, 795 F.3d at 312). In this case, however, Rejhon does not allege a comparator outside of his protected class that was treated more favorably than he was, which is fatal to his claim. *See Adams v. New York State Unified Court Sys.*, No. 22-cv-9739, 2023 WL 5003593, at *3 (S.D.N.Y. Aug. 4, 2023) (dismissing discrimination claim where plaintiff "fail[ed] to allege any appropriate comparators" as the employees she referenced were all members "of the same protected class."). Moreover, "[v]iolation of an organization's internal procedures alone is insufficient to create an inference of discrimination." *Petrovits v. New York City Transit Auth.*, No. 95-cv-9872, 2002 WL 338369, at *8 (S.D.N.Y. Mar. 4, 2002); *see also Anderson v. New York City Health and Hosps. Corp.*, No. 16-cv-1051, 2020 WL 2866960, at *15–16 (S.D.N.Y. Mar. 2, 2020).

9

Nor do the two performance evaluations issued to Rejhon prior to his demotion supply the missing causal link. Rejhon alleges that he received a "conditional" rating in the first of these evaluations based on his interaction with Bharat a year prior related to the unprovided credentials; but plaintiff critically does not allege that the Bharat incident had anything to do with his hearing impairment, nor could he. And while the second evaluation rated plaintiff as "unsatisfactory" in, among other categories, "[c]ommunications ability," plaintiff does not allege, or argue in opposition, that this rating resulted from a manifestation of his disability. *Compare Beaton v. Metropolitan Transit Auth.*, No. 15-cv-8056, 2016 WL 3387301, at *7 (S.D.N.Y. June 15, 2016) (accepting theory of discriminatory animus that plaintiff was terminating for sleeping on the job, but only slept on the job *because of* medication required by his disability), *with Gillaspie v. Harker*, No. 19-cv-453, 2022 WL 1057180, at *15 (D. S.C. Jan. 24, 2022) (finding no evidence of disability discrimination where plaintiff's performance review critiqued her communication ability, but did not mention her hearing disability or the volume of her voice).[6] Instead, Rejhon's theory of discrimination boils down to defendants' awareness of his disability, which is plainly insufficient to establish a *prima facie* case of discrimination. *See Grimm v. Garrett Health*, No. 21-cv-11056, 2024 WL 643305, at *10 (S.D.N.Y. Feb. 15, 2024) ("Defendants being aware that Plaintiff wore hearing aids, without more, is insufficient to establish a *prima facie* case for discrimination" as such awareness does not demonstrate a causal connection between the disability and the adverse employment action). Nor, without a factually asserted causal connection to the alleged unlawful employment practice, does a complaint plausibly plead a discrimination claim. As a consequence

---

[6] In opposition, Rejhon notes that his "communication ability" was rated as "average" in a July 2019 performance evaluation, Pl. Opp. at 26, but this information is wholly absent from amended complaint. *See* Def. Mot. at 4. Even if the Court could consider this unalleged fact (it cannot), it would not help Rejhon in the way he supposes. Rather, it suggests that something other than Rejhon's loud voice (and hearing disability) caused the reduced "communication ability" rating, as the alleged criticisms of his loud voice had already been made prior to the July 2019 evaluation.

10

of the assemblage of all these pleading deficiencies, defendants' motion to dismiss plaintiff's federal disability discrimination claims is granted.[7] Since neither the amended complaint nor plaintiff's motion papers suggest any hope of filing a plausibly pleaded second amended complaint, leave for that purpose is denied.

Finally, having dismissed all of Rejhon's federal claims, the Court declines to accept supplemental jurisdiction over the NYSHRL and NYCHRL claims. *See Johnson v. Levy*, 812 F. Supp. 2d 167, 184–85 (E.D.N.Y. 2011); *Ziyan Shi v. New York Dep't of State*, 393 F. Supp. 3d 329, 343 (S.D.N.Y. 2019). These claims are dismissed without prejudice.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss all federal claims is granted and these claims are dismissed with prejudice. Having declined to exercise supplemental jurisdiction, all of plaintiff's pendant state law claims are dismissed without prejudice to their refiling in a state court of appropriate jurisdiction.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

---

[7] To the extent plaintiff is raising federal discrimination claims under a hostile work environment theory, those claims would also be dismissed. *See Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 81–84, 101 (S.D.N.Y. 2024) (references to subordinate being "a much better communicator" than plaintiff were "plainly inadequate to give rise to a hostile-work-environment claim under [] ADA" despite plaintiff having a "disabling neurological condition which cause[d] him to stutter"); *Murtha v. New York State Gaming Commission*, No. 17-cv-10040, 2019 WL 4450687, at *13 (S.D.N.Y. Sept. 17, 2019) (dismissing plaintiff's disability-based hostile work environment claim related to his asthma where plaintiff's colleagues, *inter alia*, "jokingly offer[ed] him cigarettes and laugh[ed]" because plaintiff did not allege other "explicit[]" or "implicit[]" comments "directed at his disability"); *cf. Hughes v. City of New York*, 2021 WL 7542440, at *5 (E.D.N.Y. Aug. 25, 2021) (finding "[t]he complaint contains *just enough* to survive dismissal" where defendants "routinely muttered, 'you're crazy,'" when interacting with a plaintiff suffering from PTSD and "plaintiff's photo was defaced at least three times in two months, including with comments specifically referencing and mocking his perceived PTSD.") (emphasis added).

11

So Ordered.

Dated: Brooklyn, New York
       August 15, 2025

                                        */s/ Eric N. Vitaliano*

                                        ERIC N. VITALIANO

                                        United States District Judge